**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01245- PAB-NYW

ANTONIO MARTINEZ,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
CORRECTIONAL HEALTHCARE SERVICES,
MRS. BUFMACK,
SGT. SCHWAB,
SGT. MASSEY,
SGT.  GOSS,
LT. LONDON,
OFFICER HARRINGTON,
OFFICER FRAZIER,
HSA ANDERSON,
MRS. GARCIA,
and JOHN DOES 1-8,
      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [DOC NO. 6] PURSUANT TO FED.R.CIV.P. 12(B)(1) AND (6)**

---

Defendants, Colorado Department of Corrections ("CDOC"),  Mrs. Bufmack ("Bufmack"), Sgt. Schwab ("Schwab"), Sgt. Massey ("Massey"), Sgt. Goss ("Goss"), Lt. London ("London"), Officer Harrington, ("Harrington),  Officer Frazier, ("Frazier"), HSA Anderson ("Anderson"),  and Mrs. Garcia ("Garcia") (collectively "Defendants") through counsel, the Colorado Attorney General, respectfully move to dismiss Plaintiff's Amended Complaint [DOC #6] pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1]  In support, Defendants state

---

[1] For ease of reference, citations to "DOC. # ___" refer to the CM/ECF court docket entry.

as follows:

## STATEMENT OF THE CASE

Plaintiff, Antonio Martinez, is an inmate presently incarcerated in the Colorado Territorial Correctional Facility ("CTCF") of the Colorado Department of Corrections ("CDOC)"). Plaintiff's first claim for relief alleges violations of the American's with Disabilities Act (ADA), Rehabilitation Act (RA), Civil Rights for Institutionalized Persons Act, (CRIPA), the Colorado Montez Act (Montez), the Due Process to the Colorado and United States Constitution, and the Eighth Amendment to the United States Constitution. Plaintiff alleges he is not receiving adequate medical care or reasonable accommodations for his work assignment. In Plaintiff's second claims for relief he alleges a failure to accommodate under the ADA, RA and CRIPA, violation of the "Montez Act", and violations of the Colorado Constitution Art. II. Plaintiff alleges defendants have failed to accommodate his diabetes in his work assignment, failed to treat his diabetes (including providing diabetic shoes and diet) and failed to allow him access to the GED program. In Plaintiff's third claim for relief he alleges a violation of 42 U.S.C. Sec. 1983, the U.S. Constitution, and Colorado Constitution arising out of the same factual allegations. Last, Plaintiff also alleges these facts give rise to negligence/medical malpractice, infliction of emotional distress, and respondeat superior under state law.

Plaintiff's claims should be dismissed because he did not exhaust his administrative remedies. In the alternative, even if the federal claims were to survive this defect, Plaintiff's federal claims are barred by the Eleventh Amendment and qualified immunity. Last, the Court should decline to accept pendent jurisdiction over any remaining state law claims per 28 U.S.C. § 1367(b).

## STANDARD OF REVIEW

I.    **Motions to Dismiss**:

Rule 12(b)(1) states that a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  In addition, pursuant to Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1126-27 (10th Cir. 1998).  A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

II.   **Qualified Immunity**.

To promote the efficient administration of public services, the doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). Qualified immunity "is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *Adkins v. Rodriguez,* 59 F.3d 1034, 1036 (10th Cir. 1995).

When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004); *DeSpain*, 264 F.3d at 971. Specifically, the plaintiff must show: (1) defendant violated plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant. Reynolds, 370 F.3d at 1030. If a plaintiff fails to demonstrate either of these two parts, the court must grant a defendant qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

In discussing qualified immunity, the Supreme Court has explained that "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id. (citing Anderson,* 483 U.S. at 640; *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The purpose of qualified immunity is to give government officials "breathing room" to make reasonable but mistaken judgments, so long as their actions are not plainly incompetent. *Stanton v. Sims,* 571 U.S. 3, 5 (2013). Indeed, qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998)

(citing *Harris v. Board of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997), and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). For the reasons set forth below the plaintiff has failed to allege facts sufficient to overcome the protections afforded by qualified immunity.

## ARGUMENT

I. **Plaintiff's Claims under the Eighth Amendment, ADA, AP, "Montez Act", U.S. and Colorado Constitutions fail because he did not exhaust his administrative remedies under the PLRA.**

### A.  The Court should consider the exhaustion defense at this stage of the case.

The arguments below rely upon the contents of an affidavit from the CDOC, which addresses the CDOC's records regarding Plaintiff's grievance filings. Defendants respectfully request that this Court consider the information in the affidavit without converting this Motion to Dismiss into a Motion for Summary Judgment. Defendants recognize that a trial court generally is precluded from considering matters outside the pleadings when evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), unless the court chooses to convert the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2002) (in deciding a Rule 12(b)(6) motion, a federal court generally "should not look beyond the confines of the complaint itself"). However, several jurisdictions have confirmed that the PLRA places the onus on trial courts to resolve exhaustion issues in the early stages of litigation, because exhaustion is a precondition to bringing suit and the PLRA clearly bars trials of prisoner cases where that prisoner has failed to exhaust administrative remedies. *See, e.g., Pavey v. Conley,* 544 F.3d 739, 741 (7th Cir. 2008).

This Court's consideration of exhaustion at this early stage in the proceedings is also

proper given that significant discovery is not needed to address it.  It is well settled that

exhaustion is a threshold, procedural issue, which does not trigger the need for extensive

discovery. *See, e.g., Harris v. Champion*, 15 F.3d 1538, 1555 (10th Cir. 1994) ("Because

exhaustion is a threshold issue, it often can be addressed on the pleadings without the need for an

evidentiary hearing."). Therefore, Defendants request that the Court consider the exhaustion

defense at this time, in connection with its review of this motion to dismiss.

### B.  Plaintiff did not exhaust his administrative remedies.

Plaintiff must exhaust his administrative remedies before filing a civil action in federal

court. Plaintiff did not properly comply with CDOC's inmate grievance process prior to filing

suit in this case. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires

Plaintiff to exhaust his remedies with respect to claims regarding prison conditions brought

under 42 U.S.C. § 1983 or any other Federal law.  42 U.S.C. § 1997(a); *See Woodford v. Ngo*,

548 U.S. 81, 94 n. 4 (2006). The exhaustion requirement "is mandatory, and the district court

[is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.,* 331 F.3d 1164, 1167 n. 5

(10th Cir. 2003); *see also Martinez v.Bock*, 549 U.S.199, 211 (2007). Colorado law also

required exhaustion for constitutional or statutory rights claims arising out of prison conditions

To satisfy the exhaustion requirement, a plaintiff "must complete the administrative

review process in accordance with the applicable procedural rules—rules that are defined not by

the PLRA, but by the prison grievance process itself." *Martinez,* 549 U.S. at 218 (internal

citations and quotation marks omitted).  Thus, a plaintiff is required to abide by all of the

"agency's deadlines and other critical procedural rules," *Woodford,* 548 U.S. at 90, by "using all

the steps that the agency holds out, and doing so properly (so that the agency addresses the

issues on the merits).” *Id.*

Plaintiff checked two boxes indicating that CTCF has a formal grievance procedure and that he did exhaust administrative remedies prior to filing his Amended Complaint. DOC #6, at p. 31. However, CDOC records establish Plaintiff did not comply with the CDOC’s grievance procedures and the mandatory exhaustion requirements of the PLRA for the reasons set forth below.

The CDOC has established its own grievance procedures, which inmates must comply with in order to exhaust their administrative remedies. *Martinez*, 549 U.S. at 218 (“[I]t is the prison’s requirements, not the PLRA, that define the boundaries of proper exhaustion.”). CDOC’s relevant grievance procedures are described in Tony DeCesaro’s affidavit. ( DeCesaro Affidavit. Exh.1). Mr. DeCesaro is a Step 3 Grievance Officer with the CDOC. Ex. 1, at ¶ 1. Pursuant to CDOC policy, inmates may submit complaints about prison conditions and occurrences via a formalized three-step grievance process. *Id*. at ¶ 6. This procedure is set forth in CDOC’s Administrative Regulation 850-04 (“AR 850-04”). *Id.*[2] AR 850-04 provides that inmates are required to attempt to resolve any issue or complaint they have by filing a document known as a Step 1 grievance. *Id*. at ¶ 7. If the inmate is not satisfied with the result of the Step 1 grievance, he or she must file a Step 2 grievance form concerning the issue. *Id*. at ¶ 8. If the inmate is not satisfied with the response to their Step 2 grievance, he or she must file a Step 3 grievance. *Id*. The Step 3 grievance is the final step in the CDOC grievance process. *Id*. at ¶ 9.

---

[2] The court may also take judicial notice of the CDOC’s administrative regulations. *See City of Wichita, Kan. v. United States Gypsum Co.*, 72 F.3d 1491, 1496 (10th Cir. 1996) (finding administrative regulations subject to judicial notice); *Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations).

All CDOC inmates are informed, both orally and in writing, about how to access the CDOC's grievance system. *Id*. at ¶ 12. Inmates within the CDOC may file grievances regarding a broad range of topics, including, but not limited to, health care, violations of the ADA, claims of discrimination, violations of the Montez/Remedial Plan, and denial of a job or program based upon a disability. *Id*. at ¶ 11-12. Available remedies include modification of policy, restoration of or restitution for property, or an assurance that abuse will not recur. *Id*. at ¶ 15. Under applicable CDOC regulations, a grievance that does not comply with CDOC's procedural rules may be denied on procedural grounds, without addressing the substantive issues raised in the grievance. *Id*. at ¶ 13. For example, a grievance that is filed outside of the established time deadlines. *Id*. at ¶ 14. If a grievance is denied on procedural grounds, the inmate has not exhausted the grievance process with respect to the allegations made in the denied grievance. *Id*. at ¶ 16.

Mr. DeCesaro reviewed the CDOC's records of grievances submitted by Plaintiff to determine whether he exhausted his administrative remedies with respect to the allegations in his Amended Complaint. Mr. DeCesaro found that on May 2, 2019, Plaintiff submitted a Step 1 grievance, alleging that on February 4, 2019, his request for medical care was delayed.  *Id*. at ¶ 20. This incident forms the basis for some of his claims in this case. That grievance was filed outside the 30-day deadline established by AR 850-04(IV)(F)(1)(a). *Id*. Plaintiff's grievance was denied on procedural grounds in accordance with A.R. 850-04(IV)(E)(3)(c)(2). *Id*. at ¶ 21. Plaintiff failed to file a Step 2 and Step 3 grievance as to that occurrence.  *Id*. Thus, Plaintiff failed to fully and properly exhaust his administrative remedies as to that event. *Id*. at ¶ 21.

Plaintiff raised claims based upon the alleged failure to provide him with diabetic shoes,

i.e., tennis shoes. Plaintiff filed a Step 1 grievance on March 22, 2019, alleging CDOC lost a pair of Rawlings Tennis Shoes. *Id*. at ¶ 22. It is unclear if those shoes are the ones that are the subject of this suit. Regardless, Plaintiff's Step 1 grievance was denied, and he did not proceed to file a Step 2 or Step 3 grievance about the issue. *Id*. at ¶¶ 22-24. Therefore, Plaintiff has failed to exhaust his administrative remedies as to the failure to provide him with appropriate shoes, because to the extent the shoes that were the subject of his March 22, 2019 Step 1 grievance were the subject of this lawsuit, he failed to complete the grievance process. Alternatively, he has filed no other grievances regarding shoes, and therefore he has not exhausted his administrative remedies as to his claims regarding diabetic shoes

Prior to filing his Amended Complaint, Plaintiff did not file any grievances related to any of the other events or conditions described in the Amended Complaint. *Id*.at ¶ 25.  Because exhaustion is a precondition to suit for all prisoners who seek redress for claims arising in prison, Plaintiff's failure to satisfy that precondition mandates dismissal of the claims alleging violations of the Eight Amendment, ADA, APA, CRIPA, the Montez/Remedial Plan and the U.S. and Colorado Constitutions. *See Porter*, 534 U.S. at 520.

**II.**     **The Eleventh Amendment bars Plaintiff's claims for money damages against all Defendants in their official capacity.**

Plaintiff's Amended Complaint names Defendants Bufmack, Schwab, Massey, Goss, London, Harrington, Frazier, Anderson and Garcia in their official capacities, and seeks money damages, among other forms of relief.  DOC #6 pp. 4 and 32.  However, the Eleventh Amendment bars suits in federal court for damages against states, state agencies, and state officials in their official capacity, unless the state unequivocally waives its immunity or Congress expressly abrogates the state's immunity in creating a statutory cause of action. *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-102 (1984).  The State of Colorado has not waived

its Eleventh Amendment immunity. *See* § 24-10-101 *et seq.*, C.R.S.; *Greiss v. Colorado*, 841

F.2d 1042, 1044-45 (10th Cir. 1988).  Nor did Congress intend 42 U.S.C. § 1983 to abrogate

Eleventh Amendment immunity or override state immunity. *Ellis v. Univ. of Kan. Med. Ctr.,* 163

F.3d 1186, 1196 (10th Cir. 1998); *Quern v. Jordan*, 440 U.S. 332, 345 (1979).Claims asserted

against state employees for actions in their official capacities are construed as claims against the

State of Colorado. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Thus, individually named

Defendants are immune from Plaintiff's claims for monetary relief brought against them in their

official capacity. *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1966); *see also Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state officials acting in their official

capacities are not "persons" subject to suit under 42 U.S.C. § 1983).  All claims for money

damages against Defendants Bufmack, Schwab, Massey, Goss, London, Harrington, Frazier,

Anderson, and Garcia in their official capacities are barred.

**III.    Plaintiff Fails to State a Claim Under the Eighth Amendment.**

Plaintiff alleges a violation of his Eighth Amendment right based on a delay/denial of

proper medical care, delay in providing diabetic shoes, failure to permit involvement in the GED

class, and failure to permit his job transfer out of the kitchen.  Plaintiff fails to allege facts,

however, which establish Defendants have acted with deliberate indifference to a serious medical

need.

**A.    Legal standard for claims relating to denial/delay of medical care.**

To state a cognizable claim for inadequate medical care under the Eighth Amendment, a

plaintiff must show that a defendant acted with "deliberate indifference to serious medical

needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court has made clear that deliberate indifference "describes a state of mind more blameworthy than negligence," and requires proof of "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). First, a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need can be sufficiently serious if a physician has made a diagnosis mandating treatment or if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999). The purpose of this requirement is to limit claims to significant, as opposed to trivial, suffering. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)

In cases where treatment was delayed rather than denied altogether, an inmate must demonstrate causation by alleging facts showing he suffered "substantial harm" as a result of the delay. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). When delays in providing treatment involve less serious medical conditions, the Eighth Amendment may not be implicated. *See, e.g., White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (postponing surgery for an extended period, even until a prisoner's release from prison, does not provide a cause of action for deliberate indifference to serious medical needs if the delay would not cause further damage); *Olson*, 9 F.3d at 1477 (an inmate's pain in the months before a scheduled heart procedure was not actionable because the doctor was

able to alleviate the condition non-surgically and to administer medication).

The subjective component of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. *See Mata*, 427 F.3d. at 751; *see also Farmer*, 511 U.S. at 834 (to violate the Eighth Amendment, a prison official must have a "sufficiently culpable state of mind"). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) ("The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm.").

### B.       Medical Management of Diabetes.

Plaintiff was transferred to CTCF which is one of the few DOC facilities with an infirmary. DOC #6 ¶¶  9-10. At that time, Plaintiff was taking insulin and various other medications to treat his diabetes and hypertension. *Id*. ¶ 16.  Plaintiff declared a "medical emergency" 20-30 times over the last year with feelings of dizziness, faintness, blurred vision, perspiration, and unsteady gait. *Id*. ¶ 13. Plaintiff alleges that Defendants were deliberately indifferent to his medical needs because they did not immediately send him to the prison clinic. *Id*. ¶¶ 13-15.  On most occasions, Plaintiff only complained he "needed to go to medical".  *Id*. ¶¶ 25, 32.   At most, Plaintiff voiced complaints of subjective symptoms of dizziness, not feeling well, pain, and headache. *Id*. ¶¶ 49, 50. These verbal complaints, in and of themselves, are not

sufficient to create actual knowledge on the part of Defendants that Plaintiff  was at serious risk of substantial harm if they did not immediately send him to the clinic.

The deliberate difference standard poses a "high evidentiary hurdle akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm. *Self v. Crum*, 439 F. 3d. 1227, 1233 (10th Cir. 2006). Notably, Plaintiff has not alleged he suffered from visible objective symptoms of disease or trauma (such as bruising, weakness, bleeding, etc.) that would make it obvious to a layperson that he needed emergency medical care.   An official will not be liable unless he knows of and disregards an excessive risk to health or safety; the official must be both aware of the facts from which an inference could be drawn that a **substantial risk** of harm exists and he must draw the inference.  *Id.* at 1231 (emphasis added).

Plaintiff's allegations that Defendants were deliberately indifferent to his multiple requests for medical care solely because they did not instantaneously transport him to the infirmary are insufficient to establish a claim of deliberate indifference. Plaintiff was taken to the infirmary, just not always as quickly as plaintiff would have liked. *Id*. ¶¶ 15. Plaintiff acknowledged being treated by medical staff after requesting treatment on an emergent basis. *Id*. ¶¶ 15, 43, 44, 46, 52. Defendants have provided medications, diagnostic testing, blood sugar analysis, physical examinations, hospital treatment, specialist examinations and numerous in-house examinations DOC. #6 ¶¶ 15, 23, 43, 44, 46, 47, and 58.

Plaintiff also alleges that Defendants violated his rights by failing to give him a "weight loss injection," and a specific type and dosage of insulin recommended by an outside endocrinologist. However, CDOC is providing plaintiff with insulin for his diabetes on a regular

basis. DOC. #6 ¶¶ 15, 16, 18, 22, 36, 46, 47, 52, 54, 55.  Plaintiff even admits he does not always take his medications. DOC. #6 ¶ 147. Whether to consult a specialist or undertake additional medical testing are matters that traditionally fall within the scope of medical judgment. *Self*, 439 F.3d at 1232. In the context of a missed diagnosis or delayed referral the "need for additional treatment or referral to a medical specialist is obvious." *Self,* 439 F. 3d at 1232. Plaintiff's disagreement with the timing and nature of his the treatment does not render it actionable under the Eighth Amendment. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993).  The Constitution does not guarantee any particular treatment or treatment by a specialist. *Self,* 439 F.3d at 1232.

Plaintiff also alleges that Anderson failed to provide insulin on one occasion and failed to provide diabetic shoes for nearly a year. DOC. #6 ¶¶ 26. 37. 71.  This is length of delay is insufficient to establish deliberate indifference. *See Askew v. Davis*, 613 Fed. Appx.544 (7th Cir. 2015) (One year delay in providing inmate with therapeutic shoes did not constitute deliberate indifference to medical needs).

Plaintiff also alleges a constitutional violation because he has not been afforded a "diabetic diet" although he has been told the facility does not offer such a specific diet DOC. #6 ¶ 74.  Plaintiff does not allege he submitted a written prescription from a physician for a special diet nor does he allege he cannot create the necessary diet for himself by simply excluding or including certain foods currently available. Plaintiff has access to snacks he uses to keep his blood sugar stable. " DOC. #6 ¶ 29.  Compliance with a mandate for a special diet is met when there is some food provided that plaintiff could eat. *Frazier v. Dept. of Corrections,* 125. F.3d 861 (10th Cir. 1997).

**C.     Plaintiff fails to allege Defendants were deliberately indifferent to his physical complaints on February 4, 2019.**

According to the complaint, on February 4, 2019, Plaintiff arrived at the kitchen to perform his work at 4:30 a.m. DOC. #6 ¶ 40. At that time, Plaintiff alleges he complained to Defendant Goss about his difficulty breathing, chest pain and arm pain. Doc. #6 ¶¶ 40-42. Plaintiff does not allege that he had any outward observable signs of a serious condition. Rather, his complaints were limited to verbal statements. Plaintiff alleges Defendant Goss made some disparaging comments and did not assist in obtaining medical aid. According to the Plaintiff, a few minutes later he reported his complaints to another staff member, Officer Conley who did contact the medical infirmary. Conley advised the Plaintiff his symptoms would be addressed at 8:00 a.m., at a previously scheduled eye appointment. Doc. #6 ¶ 41. Plaintiff was seen at 8:30 a.m. in the infirmary where an EKG and other diagnostic testing was performed. Doc. #6 ¶ 43. At that point, it was determined for the first time by medical staff that a higher level of care was appropriate and that Plaintiff should be transported to the hospital. Plaintiff was taken to a local hospital where he was given care. Doc. #6 ¶ 44. Plaintiff was admitted to the hospital (for an undisclosed amount of time), and given an Aspirin and Lipitor. Doc. #6, p 44.  Plaintiff alleges he was told he had suffered a heart attack. Doc. #6 ¶¶ 44-45. Plaintiff was discharged from the hospital without any further specialized care, spent 4-5 days in the facility infirmary and then returned to work. Doc. #6 ¶ 45.

Plaintiff's allegations do not support a finding of deliberate indifference to a serious medical need that resulted in substantial harm to him. According to Plaintiff's own timeline within a matter of hours of his first verbal complaints of symptoms, he was transported to an outside hospital for care.  DOC. #6 ¶¶ 38, 43.  There are no allegations that Plaintiff manifested obvious outward signs of a serious medical condition that would have made it obvious to anyone

that a doctor's immediate attention was warranted. During the time between first reporting his symptoms at and transport to the hospital plaintiff was alert, orientated, walking around, sitting and conversing with staff. DOC. #6 ¶¶ 41, 42, 43.

The only fact pled by Plaintiff that could potentially support a finding of deliberate indifference is a statement attributed to Defendant Goss to the effect that plaintiff was "out of luck" when he reported his symptoms in the early morning.  Defendant Goss' comment does not rise to the level of cruel and unusual punishment. *Cf. Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (holding sheriff's threat to hang prisoner following prisoner's request to mail some legal correspondence did not amount to cruel and unusual punishment).

Plaintiff fails to allege any facts suggesting that Goss or others acted with a sufficiently culpable state of mind. *See Iqbal*, 556 U.S. at 683 (alleged facts must plausibly show state of mind to overcome a Rule 12(b)(6) motion). The Amended Complaint does not plead sufficient facts to demonstrate that plaintiff exhibited or reported symptoms sufficient to put Goss on notice that there was an excessive risk of harm to plaintiff or that Goss or others were consciously aware of any such risk to Plaintiff. *See Farmer v. Brennan*, 511 U.S.825, 837 (1994). Nor does the Amended Complaint allege that Goss knew Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take measures to abate it. *Id.* at 847. Even if Goss was deliberately indifferent, which has not been pled, his conduct did not result in a delay in care since Conley was notified just minutes later and did take action. . DOC. #6 ¶ 42.

Eighth Amendment liability requires more than an ordinary lack of due care for an inmate's interests or safety and more than negligence in diagnosing or treating a medical condition. *See id.* at 835; *see also Self*, 439 F.3d at 1233 ("negligent failure to provide adequate

medical care, even one constituting medical malpractice, does not give rise to a constitutional violation"); *Berry v. City of Muskogee*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (deliberate indifference requires a higher degree of fault than negligence or even gross negligence).

> **D.      Plaintiff fails to state a claim for deliberate indifference to his medical condition on February 11, 2019.**

Plaintiff alleges that on February 11, 2019, he began to experience burning and tingling in his left arm, numbness, and radiating pain from "my arm to my shoulder, back and chest area". DOC. #6 ¶46. Plaintiff had his cellmate seek assistance and care was immediately provided to the Plaintiff. .DOC. #6 ¶ 46. Plaintiff does not allege that there was a delay of his treatment.  DOC.  #6 ¶ 46. Plaintiff was taken to the infirmary, given a medical work up, and then transported to the hospital.  DOC. #6 ¶¶ 46-47. Plaintiff alleges he was told he "had evidence of cardiac shock as well as high potassium levels common to a heart attack". DOC. #6 ¶ 47. Plaintiff alleges he was told that the "heart failure and hypertension were linked to "uncontrolled diabetes." DOC. #6 ¶47.  Plaintiff does not allege facts sufficient to establish Defendants were deliberately indifferent i.e.; conduct which constitutes the unnecessary and wanton infliction of pain. *Self v. Crum*, 439 F.3d.1227, 1230 (10th Cir. 2006).

Further, even if the plaintiff has pleaded sufficient facts to suggest deliberate indifference on the part of CDOC – which he does not –  he fails to allege that CDOC's actions were pursuant to a policy, custom or practice. Failure to plead such policy and a link between the custom or policy and a violation of the same is required to establish a claim against CDOC. *Board of County Comm'rs of Brannan Cnty. Okl. V. Brown*, 520 U.S. 397, 404 (1997).

> **E.   Plaintiff fails to allege that he has suffered substantial harm.**

A delay in providing medical care only constitutes an Eighth Amendment violation when

the plaintiff can show that the delay resulted in substantial harm. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).   The level of pain required to establish the "substantial harm" requirement is not precise; however, "not every twinge of pain suffered as the result of delay in medical care is actionable." *Sealock*, 218 F.3d at 1210.  In *Mata*, 427 F.3d 745,755 (10th Cir. 2005), the Court held that delayed treatment for *severe chest pains lasting for several days,* which culminated in a heart attack resulting in permanent and irreversible heart damage, was actionable. *Id.* (emphasis added). By contrast, in *Olson*, the court held that an inmate's pain in the months before a scheduled heart procedure was not actionable because the doctor was able to treat the condition non-surgically. *Olson*, 9 F.3d at 1477.

Plaintiff does not allege a resulting lifelong handicap, permanent impairment or loss of function that otherwise did not exist before he arrived at CTFC. Plaintiff asserts his only functional limitation is standing for an hour with at least 10 minutes rest between standing periods. DOC. #6 ¶ 12.  That limitation existed when he arrived at CTFC and Plaintiff has not alleged it has gotten worse.  Plaintiff's allegations do not satisfy the substantial harm requirement for an Eighth Amendment Violation.

### F.     Plaintiff's confinement conditions are not cruel or unusual.

Under the Eighth Amendment, "[p]rison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).  However, "[t]he Constitution . . . 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an

Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (internal citations omitted).  Conditions may be "restrictive and even harsh" without violating an inmate's constitutional rights as "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To state an actionable claim of an Eighth Amendment violation to an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements. *Barney*, 143 F.3d at 1310.  First, a plaintiff must demonstrate that the conditions were objectively "sufficiently serious." *Id.*  Second, a plaintiff must demonstrate that the official acted with deliberate indifference to inmate health and safety.  *Id.*

Plaintiff alleges conduct on the part of Defendants CDOC, Bufmack, Goss, London, Schwab, Massey, Harrington, Frazier and Garcia that is not sufficiently serious to constitute an Eighth Amendment violation. Plaintiff contends Defendant Bufmack removed him from his GED class due to absences caused by attending medical appointments. DOC. #6 ¶28.  Plaintiff claims he missed class in order to attend medical appointments in April, May, and June 2018. DOC. #6 ¶ 28.  Scheduling conflicts between GED classes and medical appointments do not rise to the level of cruel and unusual punishment. *Cf Allen v. Raemisch,* 603 at 682. (Conflict between use of law library and medical appointment not actionable absent actual harm).

Plaintiff also contends that Defendants Goss, Schwab, and Massey have refused to give him breaks while working in the kitchen and refused to reassign him from kitchen duty. DOC. #6 ¶.25.  Plaintiff has no right to a job of any kind. A state has no constitutional obligation to provide an inmate with employment, even if a statute or regulation creates such an interest. *Penrod v. Zavaras*, 94 F.3d. 1399, 1407 (10th Cir. 1996) (citing to  *Sandin v. Conner*, 515 U.S.

472,  115 S.Ct. 2293, 2300 (1995) ( holding that prison regulations entitling prisoners to work do not create a constitutional liberty interest because a denial of employment opportunities to an inmate does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life).

 Plaintiff alleges Defendant Harrington verbally harassed him and gave him 20 days of loss of privileges for trying to leave the unit to seek medical care when the unit was on lock down. Plaintiff alleges Defendant Harrington complained to her supervisor about him. DOC. #6 ¶¶ 32-33. Plaintiff alleges Defendants Frazier, London and Massey all gave him a hard time about the frequency of his claimed need for medical care. DOC. #6 ¶¶ 32, 49, 91. This conduct is insufficient to establish an Eighth Amendment Violation. *See, Rivera v. Hassler*, 79 Fed. Appx. 392 (2003) (finding that allegations of verbal teasing and harassment from a guard that included false accusations of stalking the guard and which led to harassing comments from co-inmates and a transfer to a higher security facility to be insufficient to establish a significant and atypical hardship). *Cf. Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (sheriff's threat to hang prisoner following prisoner's request to mail some legal correspondence did not amount to cruel and unusual punishment).

Plaintiff alleges his case manager Defendant Garcia failed to "handle numerous grievances" and failed to obtain a new job assignment for him consistent with his physical limitations. DOC. #6 ¶ 37. The affidavit of Mr. DeCesaro, however, , dispels such allegation. *See* Mr. DeCesaro Affidavit.

## IV.  Plaintiff fails to state a claim for relief under the ADA and Rehabilitation Act Claims.

Plaintiff's second claim for relief (and some allegations under claim one) allege

violations of either or both the Americans with Disabilities Act, 42 U.S.C. §12101 or the

Rehabilitation Act, 29 U.S.C. § 794. Plaintiff contends he has been denied access to medical

care, the GED program, the job of his choice because of his diabetes and his standing limitation.

Plaintiff names Defendants Bufmack, Harrington, Frazier, Anderson, Garcia, Goss, Schwab,

Massey and London in these claims. DOC. #6 ¶¶ 69-73. Plaintiff states that he is suing

Defendants "in their individual capacities."  DOC #6 ¶¶ 13, 185.   To prevail on a Rehabilitation

Act or ADA claim the Plaintiff must allege that a public entity discriminated against him.  42

U.S.C. § 12132; *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 208 (1998) (the

ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a

disability'").  "[I]ndividual defendants in their individual capacities are not properly subject to

suit under the Rehabilitation Act or the Disability Act."  *Montez v. Romer*, 32 F.Supp.2d 1235,

1241 (D. Colo. 1999).

 Plaintiff's allegations against CDOC are insufficient to state plausible claims under the

ADA or Rehabilitation Act and must be dismissed under Rule 12(b)(6).  A plaintiff seeking

certain accommodations under the ADA must show that "(1) he is a qualified individual with a

disability, (2) who was excluded from participation in or denied the benefits of a public entity's

services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was

by reason of a disability."  *Robertson v. Las Animas Cnty Sheriff's Dep't*, 500 F.3d 1185, 1193

(10th Cir. 2007).

 To demonstrate Plaintiff is entitled to protection under § 504 of the Rehabilitation Act, he

must show that "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to

participate in the program; (3) the program receives federal financial assistance; and (4) the

program discriminates against plaintiff." *Hollonbeck v. U.S. Olympic Committee*, 513 F. 3d 1191, 1194 (10th Cir. 2008).  Because the required showings under the ADA and the Rehabilitation Act are substantially similar, the same analysis can be generally applied to Plaintiff's claims under each.  *Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011).

To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).  Plaintiff asserts his disability is being a diabetic and having a standing limitation of one hour at a time with a 10-minute break.  DOC. #6-¶¶ 8, 12. Plaintiff does not allege any medical physician or medical care provider has imposed such a restriction. Plaintiff has failed to allege that he has medical impairment that substantially limits one or more major life activity. Plaintiff has failed to allege that his one-hour standing limitation is less than what ordinary person can do.  *See Rivera v. Dowis*, No. 08-CV-02715-CMA-CBS, 2010 WL 745018, at *15 (D. Colo. Feb. 24, 2010) (finding inmate plaintiff failed to state a claim under the ADA where, although he alleged that he uses a wheelchair, he had "not alleged that he is substantially limited [in] any major life activity").

Additionally, the ADA and Rehabilitation Act only requires provision of a reasonable accommodation, not the best possible accommodation nor the specific accommodation requested by Plaintiff.  *Calbart v. Raemisch*, No. 16-CV-00004-GPG, 2016 WL 741188, at *2 (D. Colo. Feb. 25, 2016) ("[T]he ADA requires the Defendants to provide a reasonable accommodation, and not the accommodation Plaintiff prefers."). Plaintiff was reassigned to a later shift; he just

does not want to work in the kitchen at all. DOC. #6 ¶ 56. Moreover, Plaintiff has been able to complete some of his classes necessary to obtain his GED. DOC. #6 ¶ 72. The Plaintiff's own allegations establish it is possible for him to attend GED classes and attend his medical appointments albeit there may be some scheduling conflicts that slow his progress.  Plaintiff has not asserted he is permanently excluded from the program, only that his completion has been delayed.

## V.    Plaintiff fails to allege facts sufficient to state due process and equal protection violations.

The standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Plaintiff's allegations do not establish the violation of his due process rights nor demonstrate a violation of clearly established law. Defendants are entitled to qualified immunity as to Plaintiff's due process claims against them in their individual capacities.  *See Gross*, 245 F.3d at 1156.

Prisoners do not have a protected liberty or property interest in keeping a specific prison job, or even any employment at all.  *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir.1996). Without a showing of a protected property or liberty interest in lost income from not being assigned to a non-kitchen job, Plaintiff is without a protected interest and his due process claim must fail. *See, NSOP Allen v. Raemisch,* 603 Fed Appx. 682 (10th Cir.2015). (Plaintiff's Inability to perform job while in segregation was insufficient to support due process claim). In the prison context, the due process clause "affords ... no greater protection" to a prisoner than

does the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Thus, conduct that does did not amount to cruel and unusual punishment properly disposes of Plaintiff's due process claim as well. *Raemisch*, 603 Fed. Appx. at 682.

To state an equal protection claim in the absence of allegations of a fundamental right or protected class, Plaintiff must present plausible allegations that Defendants treated him differently than other similarly situated inmates and the distinction was not "reasonably related to a legitimate penological purpose." *Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004).

As to the first requirement, Plaintiff plead a bare conclusion that others (diabetic men) with the same limitations (one-hour standing limitations) do not have to work in the kitchen. Ever. To the extent any defendant could be implicated in Plaintiff's equal protection claims, such defendant is nonetheless entitled to qualified immunity where Plaintiff's allegations fail to demonstrate a constitutional violation nor any violation of clearly established law. *See Gross*, 245 F.3d at 1156.

**VI.      Plaintiff does not have a private cause of action under CRIPA.**

CRIPA confers on the Attorney General the authority "to initiate or intervene in a civil action on behalf of state institutionalized persons who are subject to egregious or flagrant conditions which deprive them of their rights." *Callahan v. Southwestern Med. Ctr.*, No. CIV–03–1434–F, 2005 WL 1238770, at *6 (W.D.Okla. Apr. 29, 2005), aff'd, 2005 WL 1656917 (W.D.Okla. July 7, 2005). CRIPA "does not provide for an individual right of action." *Id.*; *see also Cooper v. Sumner*, 672 F. Supp 1361 (D. Nev. 1987); 42 U.S.C. § 1997(a)(c).

**VII.     This court should decline jurisdiction over Plaintiff's state law claims.**

This court should decline to accept jurisdiction over Plaintiff's state claims of negligence,

intentional infliction of emotional distress, and respondeat superior.  A court may decline to accept pendent or supplemental jurisdiction over a state law claim if all federal claims have been dismissed. 28 U.S.C. § 1367 (b)(3); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).  Since Plaintiff's federal claims are all subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants request the Court decline to accept jurisdiction over Plaintiff's state law claims.

  For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed.

  Respectfully submitted this <u>13th</u> day of September 2019.

        PHILIP J. WEISER
        Attorney General

        */Cheryl A. Martin*
        CHERYL A. MARTIN *
        Assistant Attorney General
        Civil Litigation and Employment Law
         Section
        Attorneys for Defendant
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 10th Floor
        Denver, Colorado  80203
        Telephone:  720-508-6641
        FAX:  720-508-6032
        E-Mail: cheryl.martin@coag.gov

        *Counsel of Record

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of September 2019, I mailed or served the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [DOC NO. 6] PURSUANT TO FED.R.CIV.P. 12(B)(1) AND (6)** to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

<u>U.S. Mail</u>
Antonio Martinez, #146023
Colorado Territorial Correctional Facility (CTCF)
P.O. Box 1010
Canon City, CO  81215-1010


<u>*s/Sally Ott*</u>