# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01245-PAB-NYW

ANTONIO MARTINEZ,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
CORRECTIONAL HEALTHCARE PARTNERS, LLC,
JACKSON & COKER MEDICAL GROUP, LLC
MRS. BUFMACK,
SGT. SCHWAB,
SGT. MASSEY,
SGT. GOSS,
LT. LONDON,
OFFICER HARRINGTON
OFFICER FRAZIER,
OFFICER MALDONADO,
HSA ANDERSON,
MRS. GARCIA, and
JOHN DOES 1-8,

      Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
# AND ORDER TO SHOW CAUSE

---

Magistrate Judge Nina Y. Wang

This matter comes before this court for recommendation on the following motions:

(1)      Defendants the Colorado Department of Corrections ("CDOC"), Mrs. Bufmack, Sgt. Schwab, Sgt. Massey, Sgt. Goss, Lt. London, Officer Harrington, Officer Frazier, HSA Anderson, and Mrs. Garcia's (collectively, the "CDOC Defendants") Motion to Dismiss Plaintiff's Amended Complaint [DOC No. 6] Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) ("the CDOC Defendants' Motion to Dismiss"), filed September 13, 2019, [#36];

(2)     Defendant Officer Maldonado's ("Defendant Maldonado" or "Officer Maldonado") Motion to Dismiss Plaintiff's Amended Complaint [DOC No. 6] Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) ("Officer Maldonado's Motion to Dismiss"), filed January 14, 2020, [#78];

(3)     Defendant Correctional Health Partners LLC's ("CHP") Motion to Dismiss Plaintiff's Prisoner Complaint (ECF No. 6) ("CHP's Motion to Dismiss"), filed January 27, 2020, [#85]; and

(4)     Defendant Jackson & Coker Medical Group, LLC's ("Jackson & Coker") Motion to Dismiss Plaintiff's Prisoner Complaint (ECF No. 6) ("Jackson & Coker's Motion to Dismiss"), filed February 11, 2020, [#88].

The presiding judge, the Honorable Philip A. Brimmer, referred these Motions to the undersigned pursuant to the Order Referring Case and the Memoranda dated September 16, 2019, January 14, 2020, January 27, 2020, and February 12, 2020. *See* [#28; #38; #79; #86; #89]. This court concludes that oral argument will not materially assist in the resolution of these Motions. Accordingly, having reviewed the Motions and associated briefing, the applicable case law, and being otherwise advised in their premises, I respectfully **RECOMMEND** that the CDOC Defendants' Motion to Dismiss and Officer Maldonado's Motion to Dismiss be **CONVERTED** to Motions for Summary Judgment as to the issue of exhaustion of administrative remedies and be **GRANTED**; CHP's Motion to Dismiss be **GRANTED**; and Jackson & Coker's Motion to Dismiss be **GRANTED**.

## BACKGROUND

This court draws the following facts from the Amended Complaint [#6] and presumes they are true for purposes of the instant Motions. Plaintiff Antonio Martinez ("Plaintiff" or "Mr.

Martinez") is an incarcerated prisoner within the CDOC who suffers from a rare form of Type-II diabetes that makes him insulin resistant, which resulted in two hospitalizations within one year for heart attacks related to unmanageable diabetes. [#6 at ¶¶ 1-2]. Plaintiff is currently incarcerated at the Colorado Territorial Correctional Facility ("CTCF"), presumably because CTCF is one of the few CDOC facilities with an infirmary that can handle inmates with special medical needs. [*Id.* at ¶¶ 9-11]. Following his initial medical screening, Plaintiff received a "red card," which "signifies [he is] a person with a disability who has a standing restriction" that limits him to an hour of standing with ten-minute breaks in between. [*Id.* at ¶ 12].

Since his transfer to CTCF in 2018, Mr. Martinez has declared approximately 20-30 medical emergencies for symptoms "of feeling faint, dizziness, blurred vision, perspiration, and unsteady gait." [*Id.* at ¶ 13]. Mr. Martinez alleges that "medical staff . . . always dismissed [his] medical need being related to high blood sugar, and only ever increased [his] insulin without further evaluation." [*Id.* at ¶ 15]. Mr. Martinez avers that doctors have prescribed him an "excessive amount of insulin" as well as other medications for his insulin-resistant Type II diabetes. [*Id.* at ¶ 16]. Mr. Martinez alleges this amount and mix of insulin and medications is unsafe and has caused hypertension, "rapid weight gain," and extremely high blood sugar levels in an otherwise healthy man in his thirties. *See* [*id.* at ¶¶ 17-21]. According to Plaintiff, his worsening symptoms are attributable to insulin and medication mismanagement by the CDOC and a failure to receive proper blood sugar screenings, and he requires a "dense form of insulin that is very expensive" that the CDOC and CHP will not provide. [*Id.* at ¶¶ 22-23, 47, 54, 94, 141-44, 147]. Plaintiff further alleges he has not received the medications doctors have recommended to alleviate his severe medical ailments because CHP has a policy of restricting and/or denying necessary follow-up care. [*Id.* at ¶¶ 53-55, 58, 94].

Mr. Martinez alleges Defendants have not only failed to adequately treat his medical ailments but have also discriminated against him by being deliberately indifferent to his disability and by failing to provide reasonable accommodations.  For instance, Defendants:

- assigned Plaintiff to work the kitchen, a labor-intensive job, despite his disabilities;
- "maintained a general attitude of indifference" to his disabilities;
- delayed providing diabetic shoes for over a year despite Plaintiff's complaints;
- terminated Plaintiff from his GED course due to medical appointments;
- revoked Plaintiff's privileges for "failing to work" due to medical appointments;
- punished Plaintiff for trying to leave his disciplinary unit for medical appointments;
- berated Plaintiff for seeking medical attention;
- punished Plaintiff for attempting to make medical appointments;
- failed to train or supervise medical staff;
- refused and/or failed to provide Plaintiff a "medical assignment" due to his needs;
- failed to handle or direct Plaintiff's "ADA requests" and his grievances;
- refused Plaintiff's attempts to declare a medical emergency and made him work;
- ordered Plaintiff back to work in the kitchen soon after his heart attack;
- refused to provide Plaintiff a diabetic diet;
- assigned Plaintiff to a labor-intensive work detail after his heart attack;
- refused to allow Plaintiff to declare a medical emergency following his heart attack;
- accused Plaintiff of malingering; and
- moved Plaintiff to a later kitchen shift but did not reassign him to less stressful job.

See [*id.* at ¶¶ 24-60, 69-76, 88-95, 145-47].

Based on Defendants' conduct, Mr. Martinez initiated this action by filing his pro se prisoner Complaint on April 29, 2019, alleging violations of his constitutional rights as well as violations of his federal and state statutory rights against the CDOC, various CDOC employees, and other medical providers. *See generally* [#1]. The Honorable Gordon P. Gallagher granted Plaintiff leave to proceed *in forma pauperis* and ordered Plaintiff to file an Amended Complaint. [#5; #7]. Upon filing an Amended Complaint, Magistrate Judge Gallagher ordered the case drawn to the undersigned, *see* [#10], but upon the Parties non-consent, the court drew this matter to Chief Judge Brimmer, who then referred the matter to the undersigned, *see* [#26; #28].

In the operative Amended Complaint, Mr. Martinez asserts claims for: (1) violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), violations of the Civil Rights for Institutionalized Persons Act ("CRIPA"), violations of the Colorado Montez Act ("Montez Act"), violations of the due process clauses of the United States and Colorado Constitutions, violations of the Eighth Amendment of the United States Constitution, and "for state law violations of negligence, malpractice, intentional infliction of emotional distress, and for state liability under respondeat superior" ("Claim 1");[1] (2) failure to accommodate under the ADA, RA, CRIPA, Montez Act, and art. II, § 25 of the Colorado Constitution ("Claim 2"); (3) deliberate indifference to Plaintiff's Eighth and Fourteenth Amendment rights under the United States Constitution ("Claim 3"); (4) negligence and malpractice ("Claim 4"); (5) intentional infliction of emotional distress ("Claim 5"); and (6) respondeat superior ("Claim 6"). *See generally* [#6].

Following service and an extension of time, the CDOC Defendants filed their Motion to Dismiss on September 13, 2019. [#36]. They argue Plaintiff failed to administratively exhaust his

---

[1] It is unclear from the Amended Complaint whether Claim 1 is a separate claim for relief or is rather a summation of all the claims Mr. Martinez pleads given that Claim 1 encompasses all the legal theories asserted in Claims 2-6. Out of an abundance of caution, this court construes Claim 1 as a standalone claim for relief.

federal law claims, but if he did, Eleventh Amendment immunity and qualified immunity bar his federal claims, and without federal law claims the court should decline to exercise supplemental jurisdiction over his remaining state law claims. *See* [*id.* at 2]. Plaintiff has since responded to the CDOC Defendants' Motion to Dismiss, [#52], and the CDOC Defendants have since replied, [#66]. The CDOC Defendants also filed a Motion to Stay discovery pending the court's disposition of their Motion to Dismiss, [#39], which this court granted, staying all discovery pending the final disposition of the Motions to Dismiss, [#56].

On November 8, 2019, this court construed Mr. Martinez's Motion to Strike and Amend [#58] as a Notice of filing an amended pleading. *See* [#63]. Plaintiff's amendment added the correct spelling for CHP and Officer Maldonado to the case caption and added Defendant Jackson & Coker as the unidentified medical provider. *See* [*id.*]. Because Mr. Martinez's proposed amendments did not add any substantive factual allegations or claims to his Amended Complaint, this court construed the operative Amended Complaint [#6] as asserting claims against CHP, Jackson & Coker, and Officer Maldonado, rather than requiring Mr. Martinez to file a Second Amended Complaint.

On January 14, 2020, Officer Maldonado filed his Motion to Dismiss. [#78]. Like the CDOC Defendants, Officer Maldonado argues Plaintiff failed to administratively exhaust his federal law claims, but if he did, Eleventh Amendment immunity and qualified immunity bar his federal claims, and without federal law claims the court should decline to exercise supplemental jurisdiction over his remaining state law claims. *See* [*id.* at 3]. CHP filed its Motion to Dismiss on January 27, 2020, arguing Plaintiff fails to comply with federal pleading standards and generally fails to plead any viable claims against CHP. *See generally* [#85]. On February 11,

2020, Jackson & Coker filed its Motion to Dismiss, arguing Plaintiff fails to state any plausible claims for relief against Jackson & Coker. *See generally* [#88].

Mr. Martinez did not respond to the Maldonado, CHP, or Jackson & Coker Motions to Dismiss within the allotted time to do so. But on April 6, 2020, Mr. Martinez filed a Motion requesting an extension of time to respond to these Motions to Dismiss, [#94], which this court granted, providing Plaintiff until April 27, 2020 to file his Response(s) to those motions. *See* [#96]. Further, given the exhaustion issues raised by the CDOC Defendants and Officer Maldonado, the undersigned provided the Parties notice of this court's intent to convert their Motions to Dismiss to Motions for Summary Judgment as to the exhaustion issue and allowed Mr. Martinez to supplement the record as to the exhaustion issue only. *See* [#92].

On April 24, 2020, Plaintiff filed his "Brief in Opposition to Motion to Dismiss," which appears to be a carbon copy of his Response in opposition to the CDOC Defendants' Motion to Dismiss, and which this court construes as Plaintiff's supplementation of the record for purposes of summary judgment as to the issue of exhaustion, though Mr. Martinez offers no additional evidence. *See* [#97]. On April 29, 2020, Mr. Martinez filed his "Answer to Remaining Motions to Dismiss." [#98]. CHP, Jackson & Coker, and Officer Maldonado have since replied. *See* [#100; #101; #103]. Because the Motions are now ripe for Recommendation, I consider them below.

## LEGAL STANDARDS

### I. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir.

2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014), even in the absence of a challenge from any party, *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack the court takes the allegations in the Complaint as true; for a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## II.     Rule 12(b)(6) of the Federal Rules of Civil Procedure

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

### III. Conversion of a Rule 12(b)(6) Motion to a Rule 56 Motion

As mentioned, the court generally limits its review of a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to the four corners of the pleadings. In some instances, the court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). The court may also take judicial notice of undisputed court documents and matters of public record without requiring conversion, but the court may consider those documents only to show their contents, not to prove the truth of matters asserted therein. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

Beyond these limited circumstances, if the Parties rely on materials outside the four corners of the complaint or intend to rely on substantive contents of documents to which the court may take judicial notice, the court has the discretion to convert a motion to dismiss to one for summary judgment. This is particularly so when, as here, the CDOC Defendants and Officer Maldonado move to dismiss Plaintiff's claims for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), *see Wright v. Gess*, No. 18-CV-03338-STV, 2019 WL 4464142, at *3 (D. Colo. Sept. 18, 2019), because exhaustion "is an affirmative defense; a plaintiff is not required to plead or demonstrate exhaustion in the complaint," *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). The conversion process is not automatic, however, as the court must provide the parties with notice so that all factual allegations may be met with countervailing evidence. *See* Fed. R. Civ. P. 12(d); *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005).

## IV.     Rule 56

If converted, summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

Once the movant demonstrates an absence of evidence supporting an essential element of the nonmovant's claim, the burden shifts to the nonmovant to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy this burden, the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986)). Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment. *See Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990); *accord Sartori v. Susan C. Little & Assocs., P.A.*, 571 F. App'x 677, 680 (10th Cir. 2014) (explaining that "conclusory,

self-serving, and generalized denials . . . are insufficient at the summary judgment stage."). Indeed, while the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant[,]" *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016), the nonmovant must point to competent summary judgment evidence, *see Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004), and may not rely on "mere reargument of his case or a denial of an opponent's allegation[,]" *see* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

## V.     Pro se Litigants

In applying these legal principles, this court is mindful that Mr. Martinez proceeds pro se and is entitled to a liberal construction of his papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a pro se party. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's pro se status exempt her from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## ANALYSIS

The following analysis begins with consideration of the CDOC Defendants' invocation of Eleventh Amendment immunity as to Plaintiff's claims for monetary damages against individual Defendants in their official capacities, because such a defense undoubtedly implicates the court's subject matter jurisdiction. *See Havens v. Colo. Dep't of Corrs.*, 897 F.3d 1250, 1260 (10th Cir. 2018); *cf. Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (holding that once a federal court determines that it is without subject matter jurisdiction, it

must not proceed to consider any other issue). Because I find that the Eleventh Amendment does not bar all of Mr. Martinez's federal claims, I turn to whether Plaintiff exhausted his administrative remedies as to his remaining federal claims against the CDOC Defendants and Officer Maldonado. In doing so, I recommend the conversion of the CDOC Defendants' Motion to Dismiss and Officer Maldonado's Motion to Dismiss to Motions for Summary Judgment, and treat them as such, pursuant to the Notice of Conversion this court issued to the Parties and conclude Plaintiff has not exhausted his administrative remedies. I then consider whether Mr. Martinez pleads cognizable federal claims against CHP and Jackson & Coker; I conclude he fails to do so. Finally, because I determine Mr. Martinez's federal claims are subject to dismissal, I finish with a recommendation that the court decline to exercise supplemental jurisdiction over Plaintiff's remaining state laws and that those claims be dismissed without prejudice as to all Defendants.

## I.     Eleventh Amendment Immunity

### A.     Applicable Law

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity extends to suits by citizens against their own state or its agencies in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995); *see also Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1232 (10th Cir. 1999) ("Only a state or 'arms' of a state may assert the Eleventh Amendment as a defense to suit in federal court."). For claims brought pursuant to § 1983, a claim against a state official sued in her official capacity "is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Eleventh Amendment therefore bars suits

against state officials sued in their official capacities for monetary damages pursuant to § 1983. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) ("§ 1983 does not abrogate a state's sovereign immunity"). As the party asserting jurisdiction, Mr. Martinez bears the burden of demonstrating that Eleventh Amendment immunity does not apply. *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008).

### B. Application

Defendants Bufmack, Schwab, Massey, Goss, London, Harrington, Frazier, Anderson, Garcia, and Maldonado (collectively, the "Individual Defendants") argue Eleventh Amendment immunity bar Plaintiff's claims for monetary damages against them in their official capacities. *See* [#36 at 9; #66 at 9; #78 at 5]. The Individual Defendants contend that such claims are essentially claims against the State of Colorado (through the CDOC, an arm of the State) and because the State has not unequivocally waived its Eleventh Amendment immunity, Mr. Martinez may not seek monetary damages against the Individual Defendants in their official capacities. *See* [#36 at 9-10; #66 at 9; #78 at 5].

Plaintiff responds that he seeks monetary damages from the Individual Defendants in their individual capacities. [#52 at 17]. He does, however, seek monetary damages against the Individual Defendants in their official capacities under the ADA and RA, because Congress has abrogated states' Eleventh Amendment immunity under these statutes. *See* [*id.* at 17-18].

To start, it appears that Mr. Martinez seeks monetary damages against the Individual Defendants in their individual capacities. *See* [#6 at 4, 32]. Such relief is appropriate "because any award of damages will be satisfied from the individual's personal assets and will not be paid from the state treasury." *Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1133

(10th Cir. 2001) (explaining that under such circumstances the Eleventh Amendment does not bar such claims).

Likewise, Mr. Martinez is correct that Congress unequivocally abrogated the States' Eleventh Amendment immunity under § 504 of the RA in enacting 42 U.S.C. § 2000d-7(a)(1), which reads, "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." Thus, the State of Colorado (and state entities like the CDOC) has waived its Eleventh Amendment immunity under the RA by "accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7." *Arbogast v. Kansas, Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015) (internal quotation marks omitted) (explaining Congress validly abrogated Eleventh Amendment immunity pursuant to its powers under § 5 of the Fourteenth Amendment). Thus, the Eleventh Amendment does not bar Plaintiff's RA claims for monetary damages against the Individual Defendants in their official capacities.

Despite Congress's intent to abrogate the States' Eleventh Amendment immunity under the ADA, *see Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363-64, 373-74 (2001) (concluding 42 U.S.C. § 12202 expressed Congress's intent to abrogate Eleventh Amendment immunity, it was not a valid exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment for purposes of a Title I claim for monetary damages against a state), the ADA does not include an unequivocal abrogation of the States' Eleventh Amendment immunity, *see Levy v. Kansas Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1171 (10th Cir. 2015) (concluding that the RA's Eleventh Amendment immunity waiver provision does not apply to the ADA). Relevant here, in *United States v. Georgia ("Georgia")*, 546 U.S. 151 (2006), the Supreme Court of the United States considered "whether a disabled inmate in a state prison may sue the

State for money damages under Title II of the [ADA]." *Id.* at 153. There, a paraplegic state inmate challenged the conditions of his confinement under both the Eighth Amendment of the United States Constitution and Title II of the ADA, alleging the defendants excluded him from utilizing the jail's hygienic, medical, mobility, and other services because of his disability, which also violated his Eighth Amendment rights. *See id.* at 155-57. The Court found these allegations plausible to establish a discrimination claim under Title II and "were evidently based, at least in large part, on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment." *Id.* at 157. The Court therefore held, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159 (emphasis in original).

In determining whether a plaintiff may pursue monetary damages against a state for violations of Title II, the Supreme Court articulated three factors to guide the inquiry:

1. which aspects of the State's alleged conduct violated Title II;

2. to what extent such misconduct also violated the Fourteenth Amendment; and

3. if the misconduct did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012) (quoting *Georgia*, 546 U.S. at 159). The CDOC Defendants and Officer Maldonado argue Mr. Martinez fails to make the requisite showing under these three factors, as he does not allege a plausible Title II violation or a Fourteenth Amendment violation. *See* [#66 at 9]; *see also* [#36 at 20-24; #78 at 8-9]. They argue Mr. Martinez fails to allege he is a qualified individual with a disability that substantially limits one or more major life activities or that the CDOC denied Plaintiff any reasonable accommodations, nor does

he allege Defendants' conduct was so arbitrary as to shock the conscience or that Defendants treated him differently than similarly situated inmates. *See* [#36 at 20-24; #78 at 8-9]. For the following reasons, I respectfully agree that Mr. Martinez fails to allege a valid abrogation of Eleventh Amendment immunity for purposes of his ADA claim against the Individual Defendants in their official capacities.

*First*, a viable claim under the ADA requires Mr. Martinez to allege (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of the CDOC's services, programs, or activities; and (3) such exclusion was due to his disability. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). This court assumes without deciding that Mr. Martinez is a qualified individual with a disability, though this is not entirely clear, and he alleges the CDOC (and the Individual Defendants in their official capacities) excluded him from CTCF's medical, job, and educational services. *See generally* [#6]. To establish the requisite discrimination by way of his disability, Mr. Martinez may allege intentional discrimination (i.e., disparate treatment) or a failure to provide a reasonable accommodation. *See Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012).

Mr. Martinez contends he has been improperly assigned to work in the kitchen despite his medical condition and standing restrictions, and Defendants' failed to provide a reasonable accommodation for his job in the kitchen. [#6 at p. 9 ¶ 24]. But the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has held that the ADA (and the RA) "does not apply to issues of prison employment." *White v. State of Colorado*, 82. F.3d 364, 367 (10th Cir. 1996); *see also Marshall v. Wyoming Dep't of Corr.*, 592 F. App'x 713, 716-17 (10th Cir. 2014) ("the ADA and RA do not apply to prison employment").

**Second**, this court agrees with the Individual Defendants that Mr. Martinez fails to allege conduct that <u>also</u> violated the Fourteenth Amendment. In Claims 1 and 3, Mr. Martinez references the due process clauses of the United States and Colorado Constitutions (Claim 1) as well as deliberate indifference to his Fourteenth Amendment rights. *See generally* [#6]. At bottom, Mr. Martinez alleges Defendants were deliberately indifferent to his serious medical needs and his disability by delaying and/or denying treatment for his Type-II diabetes. *See generally* [*id.*]. These allegations, however, are more appropriately analyzed under the Eighth Amendment, not the more generalized provisions of substantive due process. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (examining the inmate-plaintiffs' claims for the denial of medical care under the Eighth Amendment, rather than the Fourteenth Amendment, because "where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process."). Nor do Mr. Martinez's allegations rise to the level of those pleaded in *Georgia*, which included that the inmate was confined in his cell for 23-to-24 hours per day during which he could not turn his wheelchair around, he could not use the toilet or shower without assistance that was routinely denied, he was forced to sit in his own urine and feces because jail personnel refused to assist in cleaning up waste, and he was denied medical treatment and other jail services. *Georgia*, 546 U.S. at 155, 157 (noting such deliberate refusals to accommodate "disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" likely violated Title II as well as § 1 of the Fourteenth Amendment).

Additionally, the Amended Complaint contains only one conclusory allegation that "[o]ther inmates with diabetes or who have standing restrictions are not required to work in the kitchen. This disparate treatment has a discriminatory effect on me," [#6 at ¶ 27], which is

insufficient to plead a plausible equal protection claim, *see Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-19 (10th Cir. 2011) (explaining that general allegations that others were similarly situated yet treated differently is insufficient to plead a plausible equal protection claim). Indeed, that allegation suggests that Mr. Martinez was not treated differently because of his disability, but for some other, unidentified reason. Mr. Martinez further fails to allege the Individual Defendants' conduct <u>was not</u> rationally related to a legitimate interest, as "'the States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such an individual are rational.'" *Guttman*, 669 F.3d at 1116 (quoting *Garrett*, 531 U.S. at 367).

### C.      Conclusion

Based on the foregoing, the Eleventh Amendment does not bar Plaintiff's claims for monetary damages against the Individual Defendants in their <u>individual</u> capacities or their <u>official</u> capacities under the RA. The Eleventh Amendment does, however, bar Plaintiff's claim for monetary damages under Title II against the Individual Defendants in their <u>official</u> capacities because Mr. Martinez fails to plead Title II violations that <u>also</u> violate the Fourteenth Amendment. *See Georgia*, 546 U.S. at 157. This court now turns to whether Mr. Martinez exhausted his claims against the Individual Defendants in either their individual or official capacities.

## II.      Exhaustion of Administrative Remedies

Given the exhaustion issue raised by the CDOC Defendants and Officer Maldonado, this court provided the Parties' notice that it intended to treat their respective Motions to Dismiss as Motions for Summary Judgment under Rule 56 as to the exhaustion issue. *See* [#92]. Because the issue of exhaustion of administrative remedies is an affirmative defense that requires this court to look outside the four corners of the pleading, this court respectfully **RECOMMENDS** conversion

of the instant Motions to Dismiss to ones for summary judgment.  Accordingly, I consider under Rule 56 whether Plaintiff exhausted his federal claims against the CDOC Defendants and Officer Maldonado that the Eleventh Amendment does not bar.

### A.     Applicable Law

The PLRA commands: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Any prisoner who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life must first exhaust the administrative remedies available to him in prison."  *May v. Segovia*, 929 F.3d 1223, 1226-27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007)).  "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."  *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal citations omitted).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply."  *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

But the PLRA makes explicit that a prisoner must exhaust only <u>available</u> administrative remedies.  42 U.S.C. § 1997e(a).  An available remedy is one "capable of use for the accomplishment of a purpose."  *See Booth v. Churner*, 532 U.S. 731, 737 (2001).  For purposes of the PLRA exhaustion, an administrative remedy is <u>unavailable</u> "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel v. Grover*,

660 F.3d 1249, 1252-53 (10th Cir. 2011), or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250. Indeed, "courts [] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Once the Defendants demonstrate Mr. Martinez did not exhaust his administrative remedies, the onus is on Mr. Martinez "to show that remedies were unavailable to him." *May*, 929 F.3d at 1234 (internal quotation marks omitted).

**B.** **Application**

<u>Material Facts</u>

This court draws the following material facts from the record before it. The Parties do not dispute these material facts.

1. Plaintiff is an inmate incarcerated within the CDOC. *See* [#1; #6].

2. The CDOC has established a four-step grievance process pursuant to Administrative Regulation ("AR") 850-04 for all inmates within the CDOC to lodge complaints about policies, conditions of confinement, incidents within the facility that affect the inmate, actions of employees, health concerns, as well as ADA issues, Montez/Remedial Plan violations, and disability discrimination, among others. *See* [#37 at pp. 2-3, ¶¶ 4, 10-11].

3. The CDOC informs all inmates, both orally and in writing, about how to access the CDOC's grievance system. *See* [*id.* at p. 3, ¶ 12]; AR 850-04(IV)(A)(1).

4. Mr. Martinez received orientation at the Crowley County Correctional Facility, CTCF, Bent County Correction Facility, Fremont Correctional Facility, Denver Reception & Diagnostic Center, and the Denver Complex, and acknowledged (through his signature) that orientation included an overview of the CDOC's grievance procedures. *See* [#66-4].

5.	This process first contemplates an "initial, informal opportunity to engage in constructive dialog [sic]." [#37 at p. 2, ¶ 5 & p. 16].

6.	AR 850-04 then sets out the formalized three-step grievance process. *See* [*id.* at p. 2, ¶ 6 & pp. 6-22].

7.	The first step requires inmates to complete a Step 1 grievance, which the inmate must do within 30 calendar days "from the date the inmate knew, or should have known, of the facts giving rise to the grievance," and use of the informal process does not extend or alter this timeframe. [*Id.* at p. 2, ¶ 7 & p. 12]; AR 850-04(IV)(F)(1)(a).

8.	If an inmate is dissatisfied with the outcome of his Step 1 grievance, he must file a Step 2 grievance within five (5) days of his receipt of the Step 1 written response; the same five-day timeframe applies to filing a Step 3 grievance if the inmate is dissatisfied with the written response to his Step 2 grievance. *See* [#37 at p. 2, ¶ 8]; AR 850-04(IV)(F)(1)(d).

9.	The filing of a Step 3 grievance is necessary for an inmate to adequately exhaust his administrative remedies, *see* [#37 at p. 2, ¶ 9]; AR 850-04(IV)(E)(3)(c)(2), except in situations deemed an emergency, in which case an inmate's grievance is immediately forwarded to the administrative head or designee for review and the inmate may immediately appeal a denial to the executive director, *see* AR 850-04(IV)(G)(1)-(3).

10.	An inmate also fails to exhaust his administrative remedies if his grievance is denied procedurally, including for illegibility, failure to "clearly state the basis for the grievance or the relief requested in the space provided on the form," failure to request relief available through the grievance process, and/or altering the form itself in any fashion. [#37 at pp. 2-3 ¶¶ 13-16]; AR 850-04(IV)(D)(a)-(d), (IV)(E)(3)(c)(2).

11.     Mr. Martinez initiated this action by filing his pro se prisoner Complaint on April 29, 2019, complaining of conduct occurring in 2018 and as late as February 11, 2019. *See* [#1; #37 at p. 3, ¶ 17].

12.     On May 2, 2019, Mr. Martinez filed a Step 1 grievance concerning the handling of a medical emergency on February 4, 2019, which was denied procedurally because Mr. Martinez filed it more than 30 days after the alleged incident. *See* [#37 at p. 4, ¶ 20; #66-1].

13.     Mr. Martinez did not file a Step 2 grievance regarding the February 4, 2019 incident. *See* [#37 at p. 4, ¶ 21].

14.     Mr. Martinez filed two additional Step 1 grievances that did not relate to the events alleged in his Amended Complaint. *See* [*id.* at p. 5, ¶¶ 22-25; #66-2; #66-3].

<u>Analysis</u>

The CDOC Defendants and Officer Maldonado argue it is undisputed that Mr. Martinez did not exhaust his administrative remedies prior to filing suit, and therefore the court must dismiss his federal claims pursuant to the PLRA. *See* [#36; #66; #78; #103]. Based on the undisputed material facts, this court agrees that Mr. Martinez did not exhaust his administrative remedies prior to bringing suit because he did not file a Step 2 grievance as to the February 4, 2018 incident or a Step 1 grievance as to any of the other allegations of wrongdoing reflected in his Complaint. *See* [#37 at p. 5, ¶¶ 21, 25]; *Little*, 607 F.3d at 1249 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." (ellipsis and internal quotation marks omitted)); *see also Jones v. Smith*, 109 F. App'x 304, 307 (10th Cir. 2004) (declining to exclude the plaintiff's ADA claims from the PLRA's exhaustion requirement). The burden now shifts to Mr. Martinez to demonstrate at least a genuine dispute of material fact that those

administrative remedies were unavailable to him. *See May*, 929 F.3d at 1234. I respectfully conclude that he fails to satisfy his burden.

In his Response to the CDOC Defendants' Motion to Dismiss, and again in his supplementation of the record, Mr. Martinez argues he exhausted all available administrative remedies, including "[o]ther remedies beside grievances which did have the authority to provide remedies for certain complaints [] were exhausted." [#52 at 5]; *see also* [*id.* at 10-11].[2] Mr. Martinez, however, fails to proffer any evidence corroborating his assertions that he did exhaust his administrative remedies. *See Nichols*, 921 F.2d at 1113 (explaining that conclusory statements without supporting evidentiary support provide no probative value in opposition to summary judgment); *Sartori*, 571 F. App'x at 680 (explaining that "conclusory, self-serving, and generalized denials . . . are insufficient at the summary judgment stage."). Nor is it sufficient for Mr. Martinez to argue prison officials were aware of his complaints without utilizing CDOC's grievance procedures. *See Thomas*, 609 F.3d at 1118 (explaining that the doctrine of substantial compliance does not apply to exhaustion). Thus, this court turns to Mr. Martinez's arguments that his administrative remedies were unavailable.

*First*, Plaintiff argues administrative grievances are not required when declaring a medical emergency, which he did on February 4, 2019, but Defendants Maldonado and Goss refused to let Plaintiff seek medical treatment. *See* [*id.* at 6]. According to Mr. Martinez, declaring a medical emergency was the only way to receive the relief requested, as the CDOC does not have an emergency grievance system, and thus he did not need to file a formal grievance. *See* [*id.* at 6-8]. I respectfully disagree with Mr. Martinez.

---

[2] For clarity and consistency, this court omits citations to Mr. Martinez's Brief in Opposition to Motion to Dismiss, filed April 24, 2020, which is a duplicative copy of his Response to the CDOC Defendants' Motion to Dismiss. *Compare* [#97] *with* [#52].

Contrary to Plaintiff's suggestion, the undisputed material facts reveal that the CDOC <u>does</u> have an emergency grievance process. *See* AR 850-04(IV)(G)(1)-(3). Nonetheless, while this court agrees that it may not have been prudent for Mr. Martinez to file an emergency grievance on February 4, 2019, rather than declare a medical emergency, his Amended Complaint alleges Defendants Maldonado and Goss violated Plaintiff's constitutional rights by refusing to let him declare a medical emergency on February 4, 2019. Before Plaintiff can file suit as to this alleged constitutional violation, the CDOC's grievance procedure requires Plaintiff to file Step 1, 2, and 3 grievances as to this specific conduct. To be sure, Plaintiff filed a Step 1 grievance regarding the February 4, 2019 events, but did so after the 30-day timeframe, resulting in a procedural denial of his Step 1 grievance. *See* [#37 at p. 4, ¶ 20; #66-1]. Mr. Martinez did not pursue this grievance further, and thus his asserted medical emergency did not render his administrative remedies unavailable.

***Second***, Mr. Martinez argues his administrative remedies were unavailable because he seeks only monetary damages—relief the CDOC's grievance procedures explicitly do not provide. *See* AR 850-04(III)(C) ("damages for pain and suffering, and exemplary and punitive damages are not remedies available to offenders."). This, however, does not excuse Mr. Martinez from exhausting his administrative remedies.

In *Booth v. Churner*, the Supreme Court of the United States considered "whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." 532 U.S. 731, 734 (2001). The Supreme Court held that the general definitions of "available" and "remedy," as well as the broader statutory text and history of the PLRA, required an inmate to exhaust his administrative remedies under such circumstances. *Id.* at 737-39. The Court noted that "Congress's imposition

24

of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms[,]" and held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Id.* at 740-41.

Consistent with *Booth*, the Tenth Circuit has held that "'even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available.'" *Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005) (brackets omitted) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)). But the "PLRA does not require a prisoner who otherwise complies with the grievance process to add a futile request for a remedy that is, by the prison's own terms, unavailable." *Howard v. Waide*, 534 F.3d 1227, 1244 n.9 (10th Cir. 2008). Here, however, it is undisputed that Mr. Martinez did not exhaust his administrative remedies as to any of his federal claims against the CDOC Defendants and Officer Maldonado. And it is immaterial whether the remedies the CDOC could provide would provide Mr. Martinez full relief. *See* [#52 at 13 (arguing that even if he could request a modification to a CDOC policy, this would not have provided adequate relief)]; *but see Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 (10th Cir. 2003) (holding that the inmates were required to exhaust their administrative remedies for their § 1983 claims for monetary damages, because the grievance procedure could have provided some form of relief even though it listed as non-grievable state and federal laws and regulations). Accordingly, even though the CDOC's grievance procedure does not provide monetary damages, this did not excuse Mr. Martinez from having to first exhaust those administrative remedies prior to brining suit. *See Booth*, 532 U.S. at 740-41.

***Third***, Plaintiff argues he did not receive information regarding the CDOC's grievance procedures or how to utilize those procedures. *See* [#52 at 12-13]. But an inmate's allegations that he was unaware of the grievance procedures does not excuse him from complying with the PLRA's exhaustion requirement. *See Simmons v. Stus*, 401 F. App'x 380, 381-82 (10th Cir. 2010) (holding that the inmate failed to exhaust his administrative remedies despite the inmate's allegations that he was unaware of the applicable grievance procedures). Moreover, it is undisputed that the CDOC provides both written and oral notification of its grievance procedures to all inmates, *see* [#37 at p. 3, ¶ 12]; AR 850-04(IV)(A)(1), and Mr. Martinez signed orientation paperwork on several occasions, which specifically included orientation on the CDOC's grievance procedures, *see* [#66-4]. Mr. Martinez's arguments to the contrary, without more, are insufficient to establish otherwise.

***Fourth***, Mr. Martinez argues that Defendant Garcia, his case manager, "failed to follow up on grievances by the Plaintiff, provide the proper forms on time, or file them on time." [#52 at 13]. As mentioned, "courts [] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda*, 478 F.3d at 1225. Other than his lone assertion to this effect in his Amended Complaint, Mr. Martinez proffers no factual evidence to support this conclusory assertion. *See May*, 929 F.3d at 1235 (holding that the plaintiff failed to offer any factual support for his allegation that prison officials prohibited him from filing grievances "beyond the allegation itself," which was insufficient to demonstrate his administrative remedies were unavailable). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio*, 125 F.3d at 1331 (quoting *Anderson*, 477 U.S. at 249, 252). Thus, Mr. Martinez fails to demonstrate

that Defendant Garcia somehow prohibited Plaintiff from filing grievances as to the claims asserted in his Amended Complaint.

###    C.    Conclusion

Based on the foregoing, this court respectfully concludes that Mr. Martinez failed to exhaust his administrative remedies prior to bringing suit and has not carried his burden of demonstrating that those remedies were unavailable.  Accordingly, I respectfully **RECOMMEND** that the CDOC Defendants' and Officer Maldonado's Motions to Dismiss be **CONVERTED** to Motions for Summary Judgment as to the issue of exhaustion and be **GRANTED** and that Mr. Martinez's federal claims against these Defendants be **DISMISSED without prejudice**.  *See Gallagher*, 587 F.3d at 1068 ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice."  (emphasis in original)).

## III.    Failure to State Federal Claims Against CHP and Jackson & Coker

CHP and Jackson & Coker move to dismiss Mr. Martinez's claims against them for failure to plead plausible claims for relief.  *See generally* [#85; #88; #100; #101].  Plaintiff opposes the Motions to Dismiss, arguing that he rests on his assertions in his Amended Complaint.  *See* [#98]. Notwithstanding this court's belief that Mr. Martinez's Amended Complaint, which appears to attribute wrongdoing to Defendants generally, does not provide requisite notice to CHP and Jackson & Coker as to the basis for the claims asserted against them under Rule 8 of the Federal Rules of Civil Procedure, *see Matthews v. Bergdorf*, 889 F.3d 1136, 1148 (10th Cir. 2018) ("[a] complaint that fails to differentiate wrongful acts among multiple defendants, alleging instead multiple violations by unspecified defendants does not provide the fair notice the law requires."),

I respectfully conclude that Plaintiff fails to plead plausible federal claims against CHP and Jackson & Coker.[3]

## A. Violations of the ADA and RA

CHP and Jackson & Coker move to dismiss Plaintiff's ADA and RA claims for three reasons. First, they argue they are not public entities subject to Title II of the ADA. *See* [#85 at 9-10; #88 at 7-8; #100 at 5; #101 at 5-6]. Second, they argue Mr. Martinez fails to allege they receive federal assistance—a necessary element to a viable RA claim. *See* [#85 at 10-11; #88 at 8; #100 at 5; #101 at 6]. Third, and finally, they argue assuming John Does 1-8 are CHP and/or Jackson & Coker employees, neither the ADA nor the RA allows suits against individuals. *See* [#85 at 11; #88 at 8-9; #101 at 6]. For the following reasons, I respectfully conclude Mr. Martinez fails to plead viable ADA and RA claims against CHP and Jackson & Coker.

***First***, CHP and Jackson & Coker are correct that Title II applies only to public entities, which includes "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). Both CHP and Jackson & Coker rely on the Tenth Circuit's conclusion in *Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013), wherein the Tenth Circuit held that "Title II of the ADA does not generally apply to private corporations that operate prisons." *Phillips*, however, was decided at summary judgment and concerned only private corporations operating prisons. Here, Mr. Martinez alleges CHP is "responsible in part for medical care to inmates at CTCF, and ADA compliance at CTCF." [#6 at p. 3]. Based on these allegations, this

---

[3] Because Mr. Martinez's claims each involve several different and overlapping legal theories, I address the claims against CHP and Jackson & Coker by the legal theories asserted, rather than on a claim-by-claim basis.

court cannot determine as a matter of law that CHP is not subject to liability under Title II of the ADA; the same is true for Jackson & Coker.

*Second*, this court respectfully disagrees with CHP and Jackson & Coker that Mr. Martinez fails to allege their receipt of federal assistance for purposes of his RA claim. To be sure, receipt of federal assistance is a necessary element of a viable RA claim. *See Phillips v. Tiona*, No. 10-CV-00334-PAB-KMT, 2011 WL 2198493, at *2 (D. Colo. June 7, 2011) (dismissing the plaintiff's RA claim for failure to allege the defendants received federal assistance). But Mr. Martinez's Amended Complaint alleges, "These defendants, each and every [sic] of them, are generally responsible for ADA and other statutory compliance at CTCF. . . . These defendants [r]eceive federal and state funds specifically for accommodating persons with disabilities." [#6 at ¶¶ 63-64 (emphasis added)]. Because this court must construe Mr. Martinez's pleadings liberally and accept his factual allegations as true at this juncture, I conclude dismissal of his RA claims against CHP and Jackson & Coker on this basis is not warranted.

*Third*, this court agrees with CHP and Jackson & Coker that Mr. Martinez cannot maintain his ADA and RA claims against John Does 1-8 to the extent they are employees of CHP and/or Jackson & Coker. *See Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (holding that "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."); *Romero v. Bd. of Cty. Commissioners for the Cty. of Curry*, 202 F. Supp. 3d 1223, 1266 (D.N.M. 2016) ("The Court and numerous Courts of Appeals have concluded that Title II of the ADA does not provide for individual capacity suits against state officials." (internal quotation marks omitted) (collecting cases)); *Glenn v. Davis Sch. Dist.*, No. 1:19-CV-00008-DAK, 2019 WL 5423728, at *5 (D. Utah Oct. 23, 2019) (dismissing RA claims asserted against individual defendants).

***Fourth***, and finally, notwithstanding the conclusions above, I respectfully conclude that Mr. Martinez fails to plead viable ADA and RA claims against CHP and Jackson & Coker. *See Curley v. Perry*, 246 F.3d 1278, 1282-84 (10th Cir. 2001) (approving of *sua sponte* dismissal under either Rule 12(b)(6) or 28 U.S.C. § 1915(e)(2) of meritless claims); 28 U.S.C. § 1915(e)(2)(B)(ii) ("the court shall dismiss the case <u>at any time</u> if the court determines . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted" (emphasis added)). Even assuming Plaintiff may sue CHP and Jackson & Coker under the ADA or RA, he fails to allege that these Defendants discriminated against him because of his disability. Rather, Mr. Martinez's allegations concerning CHP and Jackson & Coker, as medical providers, encompass only the alleged improper treatment of Mr. Martinez's Type II diabetes, not that they denied him access to other services because of his alleged disability. Such alleges do not state a plausible ADA and RA claim. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (noting, "Several circuits have expressly concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence," and concluding a denial of treatment for an inmate's disability did not constitute discrimination under the ADA or RA because "his alleged disability in this case was the reason why [he] was seeking medical treatment."); *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("Mr. Rashad's complaint alleges inadequate treatment of his post-traumatic stress disorder but does not allege that the defendant corrections officials discriminated against him on the basis of that disorder."). Indeed, Mr. Martinez alleges he was denied the treatment he needs because it is too expensive, which does not demonstrate disability discrimination. *See Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012) (dismissing the plaintiff's ADA claim because his complaints concerned "defendants' failure to provide him the medical treatment he desires," which the ADA does not remedy).

## B.  Violations of Fourteenth Amendment Due Process

CHP and Jackson & Coker move to dismiss Plaintiff's due process claims because Mr. Martinez fails to allege any violation of his due process rights or any authority supporting such a claim. *See* [#85 at 12; #88 at 9; #100 at 6; #101 at 7].  I respectfully agree.

Assuming CHP and Jackson & Coker are state actors, Mr. Martinez's due process claims arise under the Fourteenth Amendment.  The Fourteenth Amendment Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  A procedural due process claim depends on: "(1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).  A substantive due process claim based on official conduct, like here, depends on whether that conduct is so arbitrary as to the shock the conscience, not merely reckless or intentional conduct.  *See Lindsey v. Hyler*, 918 F.3d 1109, 1115-16 (10th Cir. 2019).

Aside from listing violations of due process in the header of Claim 1, Plaintiff's Amended Complaint alleges, "I believe [a]lso, that the ADA and other disability law violations complained of have denied me procedural and substantive due process [r]ights."  [#6 at ¶ 81].  This is insufficient to plead a viable procedural or substantive due process claim under the Fourteenth Amendment.  Mr. Martinez does not identify how CHP and Jackson & Coker deprived him of a protected liberty interest without an appropriate level of process (or what that process even entailed), nor does he allege conduct so egregious as to shock the conscience.[4]   Accordingly, Mr.

---

[4] And as discussed above, to the extent that Mr. Martinez seeks to characterize his challenges to the medical treatment CHP and Jackson & Coker provided, such claim is more appropriately framed as an alleged violation of the Eighth Amendment.  *See Riddle*, 83 F.3d at 1202.

Martinez fails to plead cognizable Fourteenth Amendment due process claims against CHP and Jackson & Coker.

### C. Violations of the Eighth and Fourteenth Amendments

The crux of Mr. Martinez's Amended Complaint is his allegations that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights. Mr. Martinez's deliberate indifference claim arises under the Eighth Amendment because he is a convicted prisoner.[5] "'Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (brackets omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To allege deliberate indifference, Mr. Martinez must satisfy both an objective component and a subjective component. *Requena*, 893 F.3d at 1215. That is, he must allege that CHP and Jackson & Coker were "subjectively aware" of an objectively serious medical need and "recklessly disregarded that risk." *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (brackets and internal quotation marks omitted).

But CHP and Jackson & Coker cannot be held liable for the conduct of their employees based on a theory of *respondeat superior*; they are liable only for their own acts—i.e., those they "ha[ve] sanctioned or ordered." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (internal quotation marks omitted). This is because the Tenth Circuit has extended municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) to private entities acting under the color of state law. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). To be liable under § 1983, Mr. Martinez must allege

---

[5] Regardless, courts apply the same standards to deliberate indifference claims arising under the Fourteenth Amendment for pretrial detainees. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996).

(1) CHP and Jackson & Coker executed a policy or custom that (2) caused Mr. Martinez to suffer the deprivation of federal and/or constitutional rights. *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009). This requires Mr. Martinez to allege a "direct causal link between the policy or custom and the injury alleged." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (internal quotation marks omitted).

CHP and Jackson & Coker argue Mr. Martinez cannot maintain a deliberate indifference claim against them because he fails to allege the requisite policy or custom that caused his alleged constitutional injuries, and he fails to allege a cognizable violation of his Eighth Amendment rights. Notwithstanding the fact that it is unclear which actors or John Does are subordinates of CHP and/or Jackson & Coker vis-à-vis CDOC employees, *see Washington v. Unified Gov't of Wyandotte Cty., Kansas*, 847 F.3d 1192, 1197 (10th Cir. 2017) (explaining that the plaintiff allege the entity's employees "causing the harm violated the plaintiff's constitutional rights; otherwise, the [entity] cannot be held liable."), I respectfully conclude Mr. Martinez fails to allege that a CHP or Jackson & Coker policy or custom caused his alleged constitutional injuries. I therefore focus only on this argument.

Mr. Martinez may plead the requisite policy or custom by alleging the existence of a "formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Burke v. Regalado*, 935 F.3d 960, 998-99 (10th Cir. 2019) (internal quotation marks omitted). Moreover, Mr. Martinez must allege a "direct causal link between the policy or custom and the injury alleged." *Waller*, 932 F.3d at 1284 (internal quotation marks omitted). This, Mr. Martinez fails to do.

Plaintiff alleges that CHP "ha[s] a policy of [r]estricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive." [#6 at ¶ 94]. It is unclear whether this is

a formally promulgated policy, and there is no mention of any policy promulgated or ratified by Jackson & Coker. Nor are there any other factual averments corroborating Mr. Martinez's allegations that CHP's policy of denying medical care based on cost was the reason CHP, or Jackson & Coker, or their respective employees denied Plaintiff's requested medical care. Plaintiff's conclusory allegations and subjective contentions, without supporting factual averments, do not establish the existence of a CHP or Jackson & Coker policy that caused his alleged constitutional injuries. *See Waller*, 932 F.3d at 1284. Indeed, the Tenth Circuit has observed that "[t]he naked assertion that Defendants considered cost in treating an inmate's [medical condition] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Sherman v. Klenke*, 653 F. App'x 580, 592 (10th Cir. 2016). *Cf. Swan v. Physician Health Partners, Inc.*, 212 F. Supp. 3d 1000, 1009 (D. Colo. 2016).

Nor do Plaintiff's allegations regarding inadequate medical care establish the existence of a CHP and/or Jackson & Coker custom. "A 'custom has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law.' In order to establish a custom, the actions of the municipal employees must be 'continuing, persistent, and widespread.'" *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (quoting *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)). A plaintiff may make such a showing by "offer[ing] evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Gates*, 996 F.2d at 1041. Mr. Martinez, however, fails to provide any factual allegations (as opposed to conclusory allegations) of similarly situated inmates subjected to similar conduct. *Cf. N.E.L. v. Douglas Cty., Colorado*, 740 F. Appx. 920, 933 (10th Cir. 2018) ("a single statement doesn't suffice to allege a

continuing, persistent, and widespread [] custom.").  Unlike *Swan*, Mr. Martinez has no allegations that he was told by any health care provider that not receiving the care at issue was due to a policy. *Swan*, 212 F. Supp. 3d at 1009 ("Significantly, in this context, Plaintiff alleges in his Amended Complaint that [Defendant] told him that 'in his experience, [CHP] nearly always required extra steps' before granting an MRI request.").  And Mr. Martinez does not allege that this lone incident is sufficient for purposes of CHP's and Jackson & Coker's liability, because he fails to "show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (internal quotation marks omitted).

Lastly, Mr. Martinez alleges a failure to train and supervise employees may constitute deliberate indifference.  *See* [#6 at ¶¶ 79, 99].  Mr. Martinez is correct that an entity's failure to train or supervise its employees may give rise to liability if that failure demonstrates the entity's deliberate indifference to the alleged constitutional violations.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).  Mr. Martinez may satisfy the deliberate indifference standard if CHP and Jackson & Coker have "actual or constructive notice that [their] action or failure to act is substantially certain to result in a constitutional violation and [they] consciously or deliberately choose[] to disregard that risk of harm." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).  Aside from alleging that a failure to train or supervise may constitute deliberate indifference, Mr. Martinez fails to allege CHP and Jackson & Coker were specifically responsible for these failures.  Indeed, Mr. Martinez attributes these failures to John Does 1-8.  *See* [#6 at ¶ 79].  Further, Mr. Martinez's Amended Complaint attributes wrongdoing to several actors, many of whom do not appear to be CHP's or Jackson & Coker's subordinates, which does not satisfy the "rigorous standards of

culpability and causation" applicable to failure to train and supervise theories of entity liability. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so [i.e., inadequate training and supervision], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

In sum, Plaintiff's various allegations of misconduct are not fairly traceable to any policy or custom attributable to CHP or Jackson & Coker. Accordingly, Mr. Martinez fails to allege a cognizable deliberate indifference claim against CHP and Jackson & Coker.

### D.    Conclusion

Based on the foregoing, this court respectfully concludes that Plaintiff fails to plead any cognizable federal claims against CHP and Jackson & Coker. Accordingly, I respectfully **RECOMMEND** that CHP's Motion to Dismiss and Jackson & Coker's Motion to Dismiss be **GRANTED**.[6]

## IV.    Supplemental Jurisdiction Over Plaintiff's State Law Claims

Given this court's recommendation that Mr. Martinez's federal claims be dismissed as to all Defendants, this court also respectfully **RECOMMENDS** that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Claims 4, 5, and 6) and those claims be

---

[6] Though CHP and Jackson & Coker request that Mr. Martinez's claim against them be dismissed with prejudice [#88 at 12], they do not discuss the standard for dismissal of a pro se complaint with prejudice. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (quotation and citation omitted). The court declines to craft such arguments, particularly given that CHP and Jackson & Coker have been represented by able counsel since the inception of this action. *See United States v. Davis*, 622 Fed. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"), and therefore this court does not pass on this particular issue.

**DISMISSED without prejudice** as to all Defendants. *See Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) (noting that the court has discretion to dismiss supplemental state law claims once it dismisses federal claims).

**V.      Does 1-8**

Plaintiff also identifies Does 1-8 as Defendants, who are allegedly "responsible for ADA compliance at CTCF and implementing and furthering constitutionally adequate policies and customs related to ADA compliance, as well as the proper pertaining and supervision of their subordinates, including the named defendants." [#6 at pp. 1, 4 ¶ 12, 6 at p. 18 ¶ 79]. Rule 4(m) of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Plaintiff filed this action on April 29, 2019. [#1]. To date, Plaintiff has not identified Does 1-8 nor have they been served.[7] Accordingly, by this Recommendation, this court gives Mr. Martinez notice that it appears that dismissal of these Defendants appears proper for lack of service. To the extent Mr. Martinez disagrees, he is **ORDERED TO SHOW CAUSE** no later than **June 26, 2020** as to why this court should not recommend that Does 1-8 be dismissed.

**CONCLUSION**

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)      The CDOC Defendants' Motion to Dismiss [#36] be **CONVERTED** to a Motion for Summary Judgment as to the issue of exhaustion and be **GRANTED**;

---

[7] Nor does it appear that these individuals can be identified by the description Mr. Martinez has given.

(2)     Officer Maldonado's Motion to Dismiss [#78] be **CONVERTED** to a Motion for Summary Judgment as to the issue of exhaustion and be **GRANTED**;

(3)     Defendant CHP's Motion to Dismiss [#85] be **GRANTED**; and

(4)     Defendant Jackson & Coker's Motion to Dismiss [#88] be **GRANTED**.[8]

**IT IS FURTHER ORDERED** that Plaintiff **SHOW CAUSE** no later than **June 26, 2020** why Does 1-8 should not be dismissed for lack of proper service under Rule 4(m) of the Federal Rules of Civil Procedure.  A copy of this Recommendation and Order to Show Cause shall be sent to: Antonio Martinez #146023, Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010, Canon City, CO 81215-1010.

DATED:  June 4, 2020                        BY THE COURT:

                                            Nina Y. Wang
                                            United States Magistrate Judge

---

[8] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).